Filed 6/4/20  Certified for Publication 6/26/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KEITH McCORD,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CELESTE SMITH,<br><br>    Defendant and Respondent. | G057614<br><br>(Super. Ct. No. 19V000007)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Maurice Sanchez, Judge.  Affirmed.

Keith McCord, in pro. per., for Plaintiff and Appellant.

Celeste Smith, in pro. per.; Borchard & Callahan and Tyler B. Borchard for Defendant and Respondent.

\*        \*        \*

INTRODUCTION

After the end of their relationship, former domestic partners Keith McCord and Celeste Smith each asked the trial court for a domestic violence restraining order (DVRO) against the other. The court granted Smith's request and denied McCord's request. The court also dismissed with prejudice McCord's request for an order to show cause (OSC) why Smith should not be held in contempt. McCord appealed from the court's order. We affirm.

Substantial evidence supported the trial court's findings underlying the issuance of the DVRO in favor of Smith and against McCord. There was no evidence supporting the issuance of a DVRO in favor of McCord and against Smith, and McCord makes no specific argument on appeal regarding this portion of the trial court's order.

Finally, because a judgment or order in a contempt matter is final and conclusive, no appeal lies from it.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Smith and McCord became involved in a romantic relationship in September 2014. McCord proposed marriage and gave Smith an engagement ring, which she accepted.

McCord testified he and Smith had been fighting via text messages and telephone calls over the weekend of September 9, 2018 because he had gone to Las Vegas without her. When McCord returned on September 9, he went to Smith's home, where they continued to argue. McCord testified that Smith then got in her car, backed out of her driveway, and tried to back over McCord. McCord claimed he did not immediately file a police report because he loved Smith and wanted to work things out. The appellate record, however, contains documents purporting to be McCord's report to

2

the Huntington Beach Police Department, dated September 9, 2018, claiming that Smith had threatened to kill him and said he would not live to see tomorrow.[1] Smith testified she did not threaten McCord or try to run him over with her car in September or November 2018. Criminal charges were never filed against Smith.

Smith's friend Andrea Branam testified that on October 30, 2018, she was at Smith's home when McCord came to the home several times demanding to speak to Smith, and then called Smith's cell phone and "bl[e]w her phone up with texts and phone calls." McCord testified he only texted Smith twice on that day.

Smith broke up with McCord on November 2, 2018. She testified that McCord tried to talk her out of it, hugged her, and ultimately restrained her on her bed with his hand over her mouth. After he let go of her, Smith ran outside to her driveway; at that time, she did not call the police.

McCord sent Smith e-mails throughout November, after she had stated her intention to break up with him. Dawn Sheldon, another friend of Smith, testified that the breakup was very volatile and Smith was afraid. Sheldon was scared for Smith because McCord was being "forceful," and she kept telling Smith to get a restraining order.

Olivia Freeman, Smith's daughter, testified that on November 12, McCord came to their home and expressed interest in throwing a surprise birthday party for Smith.

Smith testified that on November 13, 2018, McCord showed up at her home, uninvited, demanding to talk. When Smith asked him to leave, "he started saying [she] was going to see what it was like to be his enemy." When Smith told McCord she

---

[1] McCord's request for a temporary restraining order listed the date of the threat as November 11, 2018. The appellate record does not contain any evidence of an alleged act of abuse by Smith against McCord occurring on that date, however. McCord later stated that the November 11 date was incorrect: "We apologize for the error as we did not receive the correct date of the call report until AFTER McCord filed the police report." McCord does not explain how he could have forgotten such a significant fact as the date his fiancée threatened to kill him.

3

was going to record him, using her cell phone, if he continued to threaten her, McCord grabbed her by the wrist and squeezed, leaving a bruise. McCord claimed he never touched Smith that day, and the injury to Smith's wrist might have been caused by her hitting the side of the door when she grabbed her dog's collar.

On two occasions after November 11, 2018, McCord let himself into Smith's home via the access code on her door, without her permission, and demanded to speak to her. Although Smith asked him to leave, he refused, and Smith stood in her driveway until he left.

Branam testified that McCord continuously showed up at Smith's workplace, despite Smith's requests that he not do so, which made Smith "very upset." Branam further testified that McCord was waiting for Smith after church services on November 25, and continued to follow Smith "until he finally got the message that she wasn't going to acknowledge him." Branam encouraged Smith to change the locks on her home and pursue a temporary restraining order (TRO) against McCord.

In December, McCord continued to send Smith e-mails and left flowers on her doorstep. McCord testified he thought the break up was temporary. On one occasion, McCord texted "drive safe" to Smith when she was out with Freeman, which caused them to believe that McCord was stalking Smith. At that point, Freeman told Smith she needed to get a TRO against McCord. For his part, McCord claimed Smith responded to his "drive safe" text with a picture of a rainbow.

On December 18, 2018, McCord texted Smith a photograph of her nursing license with the message, "Is this yours? You want to fight me. I did not want to fight." Because Smith was "alarmed and concerned," she texted McCord, "What are you doing with my license?" and "My license is fine." McCord then sent Smith by text message a naked photo of herself. Smith testified she was "extremely distraught" and contacted McCord to say, "Never contact me again," and "I will sue you if you do anything with

4

my photos or my nursing license." McCord claimed he was concerned about Smith's personal matters because his computer had been hacked.

McCord claimed Smith sent him an e-mail on December 24, 2018 threatening to kill him and to let Yale University know McCord's son (who was a student athlete there) was a cheater. Smith denied sending that e-mail and testified that McCord had her computer passwords.

Although McCord claimed that Smith's request for a DVRO was made in retaliation to his own request, Smith offered evidence that she had been contemplating seeking court assistance before that time.

Smith testified McCord had stalked, harassed, and threatened her, and used her personal photos, passcodes, and other personal information against her. She did not feel safe at home, work, or in church. Smith testified McCord filed false criminal charges against her.

McCord's request for a TRO against Smith was granted on January 2, 2019. On February 13, despite the existence of the TRO, McCord left a stuffed bear on Smith's car.

On January 8, 2019, Smith filed a request for a DVRO against McCord. The request was denied pending a hearing because (1) a TRO had already been issued protecting McCord from Smith, and (2) McCord had not been provided with notice of Smith's request.

On February 8, 2019, Smith called the Huntington Beach police to report that, after she pulled into her driveway, McCord parked his car behind hers, blocking her car in. McCord walked up to Smith's driver's side window and asked her to roll down the window. Smith refused and told McCord through the closed window that he was not supposed to be at her home and he should leave. McCord then left. Because McCord was the protected party under the existing TRO, the responding officer filed an informational report but conducted no further investigation.

5

On April 8, 2019, McCord requested an OSC for contempt against Smith. McCord's request was based on Sheldon and Freeman blocking McCord's movement in the courthouse hallway following a hearing as they tried to force McCord to take back Smith's engagement ring.

On April 12, 2019, following an evidentiary hearing, the trial court entered a DVRO protecting Smith and her minor daughter from McCord. The DVRO contains personal conduct and stay-away orders, and permits Smith to record any unlawful communications by McCord. The trial court denied McCord's request for a DVRO against Smith, and dismissed with prejudice an OSC for contempt filed by McCord against Smith.

With regard to the competing requests for DVROs, the trial court made the following findings that are relevant to this appeal:

"The Court heard testimony from both sides and weighed the credibility of the witnesses. [Smith] had several witnesses which had a very consistent story with numerous actions where [McCord] went out of his way to contact [Smith] after the Temporary Restraining Orders were in place. The Court does not believe [McCord] is fearful of [Smith], as there is nothing indicating that. . . . The Court finds, there is insufficient evidence to substantiate by a preponderance of the evidence that domestic violence [by Smith against McCord] has occurred. . . . McCord's request for restraining orders is denied. [¶] As to [Smith]'s request, the Court finds [McCord] tried to exercise some dominion or control over [Smith]. The Court finds sending the picture of [Smith]'s nursing license to her as a threat. The Court further finds [McCord] continued to have contact with [Smith] months after he admitted they broke up, which is classic stalking behavior. . . . The Court finds, by a preponderance of the evidence, that acts of domestic violence have occurred and that . . . McCord is the perpetrator, and . . . Smith and her minor daughter are the victim[s]."

DISCUSSION

I.

*SUBSTANTIAL EVIDENCE SUPPORTS THE DVRO IN FAVOR OF SMITH AND AGAINST MCCORD.*

The trial court's issuance of a restraining order under the Domestic Violence Prevention Act is a discretionary matter. (Fam. Code, § 6300 et seq.; *Herriott v. Herriott* (2019) 33 Cal.App.5th 212, 223 (*Herriott*); *In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698,702.) We will not disturb a trial court's exercise of discretion unless, as a matter of law, given all the relevant circumstances, we can say (1) the trial court exceeded the bounds of reason, or (2) no reasonable judge would have made the same order. (*Herriott, supra*, at p. 223; see *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) In determining whether there is substantial evidence to support the trial court's decision, we resolve all conflicts in the evidence in Smith's favor and indulge all reasonable, legitimate inferences in favor of upholding the trial court's order. (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 31; *Herriott, supra*, at p. 223.) If two or more reasonable inferences can be reasonably deduced from the facts, we have no authority as a reviewing court to substitute our judgment for the trial court's judgment. (*In re Marriage of Fregoso & Hernandez, supra*, 5 Cal.App.5th at p. 702.)

Credibility determinations are the province of the trial court. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 182.) Here, the trial court specifically noted that it had weighed the witnesses' credibility.

A DVRO may be issued to prevent, among other things, "stalking, threatening, . . . harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party." (Fam. Code, § 6320, subd. (a).) Acts that disturb the peace of a party have been held to include those that destroy the party's mental or emotional calm. (*In re*

*Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497.) The trial court's findings that McCord's statements and actions were a means of exercising control and dominion over Smith and threatening her were amply supported by the evidence. Those acts were sufficient to constitute a disturbance of her peace, as well as stalking, threatening, and harassing. McCord correctly notes that with respect to at least one incident—his texting the photo of Smith's nursing license—there was "[n]o profanity, no shouting, no threats"; this is not the relevant standard, however. The trial court did not err in issuing the DVRO in favor of Smith and her minor daughter, and against McCord.

McCord argues on appeal that Smith improperly provided significant new evidence on the date of the hearing, which prejudiced him. McCord fails to specify any document that was presented at the last minute, or how his alleged late receipt of such a document prejudiced him. Moreover, defendant was represented by counsel in the trial court, and no objection was raised to Smith's alleged late offering of evidence. McCord could not have suffered prejudice due to the alleged late production of documentation at the earlier scheduled hearing when that hearing was continued.

Citing *Ross v. Figueroa* (2006) 139 Cal.App.4th 856, McCord argues the trial court should have granted him a further continuance to deal with Smith's alleged late submissions. That case is distinguishable for two reasons. First, the defendant in that case was entitled to a continuance as a matter of law because the restraining order was issued against him without notice. (*Id.* at pp. 861-862; see Fam. Code, § 243, subd. (a).) Here, McCord had notice of Smith's request for a restraining order, which was denied; McCord is arguing about a continuance of a later proceeding. Second, the defendant in *Ross v. Figueroa* requested a continuance, unlike McCord, who proceeded with the DVRO hearing without objection or request for a continuance.

McCord contends that the trial court abused its discretion and was biased against him because the court found that Smith had suffered a bruise to her inner, not outer wrist. Smith testified McCord caused the bruise when he grabbed her by the wrist

8

and squeezed it. She offered into evidence a photograph of her wrist. McCord testified he did not grab Smith, claimed the photograph showed the outside not the inside of Smith's wrist, and offered his ideas of how Smith's injury was caused by hitting the side of the door. The court found that it was not credible that the injury to Smith's wrist occurred as McCord said it did. Finding Smith's evidence to be more compelling and believable than McCord's does not constitute an abuse of discretion.

McCord also argues that the court abused its discretion by admitting an "unauthorized partial transcript of a purported taped conversation from May 2018 into evidence and then finding, that based upon said conversation, [McCord] acted with subtle coercive behavior." In the first place, the court did not admit the transcript into evidence. Smith testified she received a voicemail message from McCord threatening to include her "financial shenanigans" in a tax filing if she continued refusing to talk to him on the phone. McCord denied leaving such a message. No transcript was admitted. Moreover, this particular message was not specifically mentioned in the trial court's ruling on the restraining order.

McCord also argues that he did not coerce Smith by sending her a photo of her nursing license with the text message, "Is this yours?" The trial court found the text message was a part of an overall series of actions by McCord that threatened Smith's peace of mind: "Mr. McCord's behavior and continually following up, visiting Ms. Smith's house, text messaging her, sending her photographs of herself and of her nursing license, asking a fairly rhetorical question, 'Is this yours?' when he knew full well the nursing license was hers . . . shows that he did intend to exercise some form of dominion and control." Ample evidence supported the trial court's findings. Whether one single act by McCord would have been sufficient to justify the issuance of the DVRO is not the question—the trial court considers whether the totality of the circumstances supports the issuance of the DVRO. (Fam. Code, § 6301, subd. (c).)

9

McCord next argues that the trial court abused its discretion by basing its issuance of the restraining order on McCord's involvement with Smith's financial affairs.[2] McCord's continued involvement with Smith's financial affairs, as to which McCord had no actual connection, was relevant to the court's finding that he was harassing Smith or destroying her mental or emotional calm.

In his appellate briefs, McCord complains that Smith never provided supplemental discovery responses. McCord did not raise this issue in the trial court, does not provide the discovery requests or responses here, and fails to explain on appeal how any lack of supplemental discovery responses prejudiced him.[3]

McCord also argues that the court erred by failing to allow him to present evidence from his iPad. During the hearing, Smith's friend Branam testified that on October 30, 2018, McCord texted Smith "out of control, multiple times." McCord testified he sent Smith only two text messages, and offered to show the text messages on his iPad as further proof. McCord's counsel, who was questioning him, did not ask the court to view the text messages on the iPad. As discussed *ante*, when Smith wanted to use the transcript of a voicemail from McCord at the hearing, the court did not receive the transcript into evidence but allowed Smith to question McCord using the words of the transcript. There is no reason McCord could not have used the same procedure to question Branam or Smith about the number of calls he made to Smith on October 30.

---

[2] McCord also argues that the trial court conflated his attempted involvement with Smith's financial affairs with his request for an OSC re contempt against Smith. McCord misreads the transcript of the hearing. The court did not conflate anything. Rather, Smith, who was questioning McCord, changed subjects completely.

[3] McCord's opening appellate brief includes a lengthy colloquy between himself and the trial court regarding Smith's failure to provide discovery responses. This quotation is not taken from the reporter's transcript that is a part of the appellate record in this case. From the context, it appears this colloquy occurred at the earlier continued hearing on the parties' DVRO requests. As noted *ante*, any prejudice caused by Smith's late provision of documents for the earlier hearing would have been remedied by its continuance.

II.

*THE TRIAL COURT DID NOT ERR IN DENYING MCCORD'S REQUEST FOR A DVRO AGAINST SMITH, AND MCCORD PROVIDES NO ARGUMENT TO THE CONTRARY ON APPEAL.*

McCord's appellate briefs do not provide any argument relevant to his request for a restraining order.

III.

*THE JUDGMENT ON MCCORD'S REQUEST FOR AN OSC REGARDING CONTEMPT IS NOT BEFORE US ON APPEAL.*

Orders in contempt cases are final and conclusive (Code Civ. Proc., § 1222) and are not appealable (*id.*, § 904.1, subd. (a)(1)), as McCord conceded in his supplemental brief. "Because the order is final and conclusive, neither a trial court nor an appellate court can amend it for any reason, and an appellate court cannot remand a contempt cause in which the order has been declared void and annulled to the superior court to reinstitute contempt proceedings." (*In re Bloom* (1986) 185 Cal.App.3d 409, 412-413.) The issue of the trial court's order dismissing McCord's request for OSC regarding contempt is not properly before us on this appeal. (*John Bruener Co. v. Bryant* (1951) 36 Cal.2d 877, 878; *Albertson v. Warriner* (1962) 199 Cal.App.2d 560, 564-565.)

Even if the trial court's order dismissing the contempt proceedings with prejudice were properly before us, we would affirm the order. McCord argues that the trial court erred by refusing to consider evidence before denying the request for an OSC regarding contempt. To the contrary, the court indicated the request was not supported by sufficient evidence. Specifically, the court found that the TRO restrained Smith, while the actions of Freeman and Sheldon, Smith's daughter and friend, were alleged to have constituted the contempt. In the absence of evidence that Smith communicated with Freeman and Sheldon to request that they harass or block McCord, the OSC could not issue. The court also noted that the relief requested—dismissal of Smith's request for a

11

DVRO—was inappropriate in a contempt case. The court did consider the evidence presented and determined it did not make even a prima facie case for issuance of the OSC.

DISPOSITION

The order is affirmed. Respondent to recover costs on appeal.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


GOETHALS, J.

12

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KEITH McCORD,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>CELESTE SMITH,<br><br>     Defendant and Respondent. | G057614<br><br>(Super. Ct. No. 19V000007)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

Family Violence Appellate Project, ADZ Law, LLP, Building Futures, California Women's Law Center, Child Abuse Forensic Institute, Coalition for Family Harmony, Community Legal Aid SoCal, Domestic Abuse Center, Domestic Violence Legal Empowerment and Appeals Project, Empower Tehama, Family Violence Law Center, Human Options, Law Foundation of Silicon Valley, Legal Aid Foundation of Los Angeles, Legal Momentum, Los Angeles Center for Law and Justice, Public Interest Law Project, San Diego Volunteer Lawyer Program, Inc., Stopping Domestic Violence, Tri-Valley Haven, Walnut Avenue Family & Women's Law Center, Professor Margaret Drew, Professor Joan Meier, and Professor D. Kelly Weisberg have requested that our opinion, filed on June 4, 2020, be certified for publication.

It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2), (3), (4), and (6).  The request is GRANTED.  The opinion is ordered published in the Official Reports.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


GOETHALS, J.